**TARTER KRINSKY & DROGIN LLP**
*Counsel to Hans Futterman,*
*Debtor and Debtor-In-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Scott S. Markowitz, Esq.
Robert A. Wolf, Esq.
Jill Makower, Esq.
smarkowitz@tarterkrinsky.com
rwolf@tarterkrinsky.com
jmakower@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**In re:**

**HANS FUTTERMAN,**

                    **Debtor.**
------------------------------------------------------------x

**Chapter 11**

**Case No.: 17-12899 (MEW)**

**DEBTOR'S OPPOSITION TO RWNIH-DL 122ND STREET 1 LLC'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, CONVERT CHAPTER 11 CASE TO CHAPTER 7**

TO:    THE HONORABLE MICHAEL E. WILES
       UNITED STATES BANKRUPTCY JUDGE

Hans Futterman, debtor and debtor-in-possession (the "Debtor" or "Futterman"), by his attorneys Tarter Krinsky & Drogin LLP, respectfully represents and alleges as follows in opposition to the motion dated January 9, 2018 (the "Trustee Motion") of RWNIH-DL 122nd Street 1 LLC ("RWN" or "Lender") to appoint a Chapter 11 trustee and/or to convert the Debtor's Chapter 11 case to a Chapter 7 case.

## SUMMARY OF DEBTOR'S OPPOSITION

1.      RWN, a hard money lender whose "loan to own" scheme and public notice of UCC auction sale resulted in the Chapter 11 filing of the Debtor's affiliates Ladera, LLC ("Ladera") and Ladera Parent LLC (together, the "Ladera Debtors") in December 2016[1] and the filing of the instant Chapter 11 case on October 17, 2017 (the "Petition Date"), has filed the meritless Trustee Motion as a litigation tactic. No grounds exist for the appointment of an operating trustee under Bankruptcy Code section 1104(a)(1) or (a)(2) or for conversion of this case to Chapter 7.

2.      While the Trustee Motion should be denied in all respects, the Debtor submits that consideration of the Trustee Motion is premature, as RWN's standing to bring the Trustee Motion is predicated on RWN's disputed proof of claim against the Debtor (the "RWN Deficiency Claim")[2] asserting a $10,729,240 deficiency claim based on Debtor's personal guaranty (the "Debtor Guaranty") of Lender's indebtedness to RWN. As demonstrated in Debtor's pending objection (the "Claim Objection") to the RWN Deficiency Claim (which is scheduled to be initially heard on January 22, 2018), there is no deficiency owed by the Debtor under the Debtor Guaranty. The $80,070,000 fair market value of Ladera's assets purchased by RWN (which value is far in excess of RWN's $48.6 million credit bid) well exceeds the indebtedness that was owed to RWN by Ladera. Therefore, under applicable law relating to deficiency claims, the deficiency is $0, the RWN Deficiency Claim must be expunged, and any purported security interests or liens in assets of the Debtor and/or Debtor's affiliates must be discharged and cancelled. A determination that a claim is meritless, or a formal disallowance of the claim, acts to deprive a creditor of standing to move for appointment of a Chapter 11 trustee

---

[1]  Case No. 16-13382 (Jointly Administered) (hereinafter, the "Ladera Case").
[2]  Claim No. 3-2.

or to convert a Chapter 11 case. Accordingly, the Debtor respectfully submits the Trustee Motion should be held in abeyance pending the Court's determination of the Claim Objection.

**RELEVANT BACKGROUND**

3.     The procedural and factual background relevant to the Trustee Motion is detailed in the *Debtor's Supplemental Arguments Regarding Partial Confirmation of Arbitration Award and Appointment of an Independent Manager for 2280 FDB, LLC*, dated January 9, 2018 and attachments thereto [ECF No. 59], which is incorporated herein by reference. The Debtor's motion (the "Arbitration Motion") to appoint an independent manager to manage 2280 FDB, LLC ("2280 FDB") (an entity of which the Debtor indirectly owns an 80% interest) and to partially confirm the July 12, 2017 arbitration award (the "Award"),[3] which rejected virtually all of the claims by FDB's 14% investor USHA SOHA Terrace, LLC ("USHA") regarding RGS Holding LLC ("RGS") and its sole member Futterman, was noticed for hearing by this court on January 22, 2018 at 11:00 a.m.

4.     The arbitrator found — contrary to USHA's laundry list of claims parroted by RWN — that RGS and Futterman had provided an accurate capital accounting as to the condominium project (the "Condo Project") owned and developed by 2280 FDB, through December 31, 2013.

5.     The Award also *denied* eight other of USHA's claims about RGS and its sole member Futterman:

- that RGS did not maintain proper books and records (denied);

- that it falsified books and records through December 31, 2013 (denied);

- that it did not faithfully cooperate with the audit (denied);

---

[3] The Award was issued in <u>USHA SoHa Terrace LLC, et al. v. Hans Futterman, et al.</u>, AAA Case No. 13-20-1300-0729, which action was removed by the Debtor to this Court.

- that it converted a project opportunity (denied);

- that it made fraudulent misrepresentations in connection with refinancing (denied);

- that it was improperly paid brokerage commissions (denied);

- that it misrepresented the amount of its capital (denied); and

- that it improperly retained Next City Development (denied).

*See* Award at 26-27.

6.     The only finding by the Arbitrator negative to RGS and Futterman -- a finding that RGS and Futterman vehemently dispute in the Arbitration Motion -- was that Futterman engaged in certain self-dealing relating to withholding the leasing/sale of units in the Condo Project, entitling USHA to elect new managing members for both 2280 FDB and SoHa Terrace, LLC (hereinafter, the "Disputed Finding").[4]

7.     RWN's Trustee Motion, based in large part upon the Disputed Finding and certain allegations of misconduct that are either erroneous, inadvertent or minor, is nothing more than another litigation tactic by RWN, designed to thwart the Debtor's reorganization efforts and cause the Debtor to spend substantial legal fees and/or extract additional consideration from the Debtor which it is not entitled to after acquiring ownership of the Debtor's development site which will result in a substantial windfall to RWN. The Trustee Motion is baseless and unwarranted and should therefore be denied.

---

[4] Although the Debtor disputes the arbitrator's decision to remove Debtor's affiliates as managing members of 2280 FDB and SOHA, the Debtor continues to act in good faith to move along the sale process of 2280 FBD's remaining assets – five residential condominiums, a retail unit and a community facility unit - - proposing in the Arbitration Motion the appointment of a neutral third party as the substitute managing member.

# I. THE TRUSTEE MOTION SHOULD BE HELD IN ABEYANCE ON STANDING GROUNDS

8.      Under Bankruptcy Code section 1109(b), any "party in interest" may "raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). "Although the showing required to enable an entity to assert 'creditor' standing under Bankruptcy Code § 1112(b) is minimal, a facially meritless proof of claim which plainly evidences no 'right to payment,' disputed or otherwise, cannot confer 'creditor' standing upon the holder." In re Abijoe Realty Corp., 943 F.2d 121, 125 (1st Cir. 1991).  For example, in In re J.M. Check Cashing Corp., 49 B.R. 273, 277 (Bankr.E.D.N.Y.1985), it was held that a would-be creditor who had loaned money to individual corporate officers did not hold a "claim" against the corporation, and hence could not file an involuntary petition against the corporation. Furthermore, a determination that a claim is meritless, or a formal disallowance of that claim, would act to deprive a creditor of standing to move to dismiss. Abijoe Realty Corp., 943 F.2d at 125, n. 6 ("mere filing of a proof of claim meritless on its face cannot confer 'standing' pending a determination of its allowability, if the claim has been challenged and no colorable substantiation is forthcoming from the holder"); In re Rath Packing Co., 55 B.R. 528, 534–35 (Bankr.N.D.Iowa 1985) (holder of disallowed claim not "creditor" with standing to object to modification of plan).

9.      Here, the meritless RWN Deficiency Claim should not confer standing. In view of the extraordinary and drastic remedies sought in the Trustee Motion and the fact the RWN Deficiency Claim must be expunged, holding the Trustee Motion in abeyance pending the Court's determination of the Debtor's Claim Objection would best serve the interests of the Debtor and his creditors that hold valid claims.

## II.    NO GROUNDS EXIST TO APPOINT A CHAPTER 11 TRUSTEE

10.     Chapter 11 of the Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations.  In re Eurospark Indus, 424 B.R 621, 627 (Bankr.E.D.N.Y.2010).

11.     Section 1104(a) of the Bankruptcy Code, governing the appointment of a chapter 11 trustee, provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
>> (1)     for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
>> (2)     if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>> (3)     if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a).

12.     As the Second Circuit has made clear, the appointment of a trustee in a Chapter 11 case is an unusual remedy and "'[t]he standard for § 1104 appointment is very high....' " In re Bayou Group LLC, 564 F.3d 541,546 (2d Cir. 2009)(quoting Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 176 (2d Cir.2005)); see also 7 Collier on Bankruptcy, ¶ 1104.02[2][a] (noting that appointment of a trustee in a Chapter 11 case is an "extraordinary" remedy).

13.     The Court has wide discretion in considering facts that are relevant to appointment of a trustee. Id. at 86, citing Comm. of Dalkon Shield Claimants v. A.H. Robins

<u>Co., Inc.</u>, 828 F.2d 239, 241-42 (4th Cir.1987). In determining whether the appointment of a Chapter 11 trustee under Bankruptcy Code section 1104 is warranted or in the best interests of creditors, the Bankruptcy Court must bear in mind that the appointment of a trustee "may impose a substantial financial burden on a hard pressed debtor seeking relief under the Bankruptcy Code." <u>Bayou Group</u>, 564 F.3d at 546.

14.    The party seeking appointment of a Chapter 11 trustee, here RWN, has the burden of showing by "clear and convincing evidence the appointment of a trustee is warranted." <u>Bayou Group</u>, 564 F.3d. at 546-47; <u>see also</u> <u>In re 1031 Tax Group, LLC</u>, 374 B.R. 78, 85-86 (Bankr. S.D.N.Y. 2007).

15.    As demonstrated below, RWN has not met its high evidentiary burden of establishing grounds for the appointment of a trustee under either section 1104(a)(1) or section 1104(a)(2). Accordingly, the Trustee Motion should be denied in all respects.

### A.     <u>NO CAUSE EXISTS TO APPOINT A TRUSTEE UNDER §1104(a)(1)</u>

16.    Under Bankruptcy Code section 1104(a)(1), the "determination of cause ... is within the discretion of the court and due consideration must be given to the various interests involved in the bankruptcy proceeding." <u>In re Gen. Oil Distrs., Inc</u>., 42 B.R. 402, 409 (Bankr.E.D.N.Y. 1984) ("While under 1104(a)(1) the Court is not directly called upon to weigh the costs and benefits of appointing a trustee, it nevertheless cannot ignore the competing benefit and harm that such an appointment may place upon the estate." (citation and emphasis omitted)). Accord <u>A.H. Robins Co.</u>, 828 F.2d at 242.

17.    "Even in circumstances where fraud or mismanagement is present, the legislative history of § 1104(a)(1) suggests that the court ... balance the benefit to be gained from such an appointment against the detriment to the reorganization effort and the rights of the debtor that

may result from such an appointment." <u>In re Bergeron</u>, No. 13-02912-8-SWH, 2013 WL 5874571, at *6 (Bankr. E.D.N.C. Oct. 31, 2013) (internal quotations omitted).

18.     In determining whether cause exists to support the appointment of a trustee, courts may consider a wide variety of factors including, *inter alia*, whether the alleged misconduct or mismanagement was material. <u>Bergeron</u>, 2013 WL 5874571, at *6. See <u>In re TAAF, LLC</u>, No. 10–00171, 2010 WL 5 8243 6, at *1 (Bankr.E.D.N.C. Feb. 12, 2010); <u>In re Daily</u>, No. 309–05337, 2009 WL 3415204, at *3 (Bankr.M.D.Tenn. Oct. 19, 2009).

19.     In making the "cause" determination, the plain language of section 1104(a)(1) calls for an examination of both prepetition and postpetition conduct of the debtor or its management, <u>Bergeron</u>, 2013 WL 5874571, at *7; see <u>Fraidin v. Weitzman (In re Fraidin)</u>, No. 94–1658, 1994 WL 687306, at *2 (4th Cir. Dec. 9, 1994) (unpublished); however, the general "focus is on the debtor's current management, not the misdeeds of past management." <u>1031 Tax Group</u>, 374 B.R. at 86 (citation omitted); <u>In re Sletteland</u>, 260 B.R. 657, 672 (Bankr.S.D.N.Y. 2001) (holding that "on a motion for the appointment of a trustee, the focus is on the debtor's current activities, not past misconduct); <u>In re Eagle Creek Subdivision, LLC</u>, No. 08–04292, 2009 WL 613173, at *2 (Bankr.E.D.N.C. Mar. 9, 2009) ("Generally, the court must narrow its focus to the actions of current management when investigating cause for appointment of a trustee." (citation omitted)).

20.     Isolated instances of prepetition mismanagement, fraud, dishonesty or other misconduct by the debtor or its management are not sufficient to support a finding of cause under § 1104(a)(1)." <u>Bergeron</u>, 2013 WL 5874571, at *7 (citing <u>Gomez v. U.S. Trustee</u>, No. 7:09–CV–496, 2010 WL 582706, at *2 (W.D.Va. Feb. 18, 2010) (recognizing "that the mere existence of a prior felony conviction will not justify the appointment of a trustee in every

Chapter 11 case....")). "In those situations, courts have been reluctant to appoint a trustee absent signs of postpetition mismanagement or misconduct because '[s]peculation that a debtor may do something in the future does not overcome the strong presumption that the debtor should be permitted to remain in possession in a chapter 11 case or justify the additional costs of a trustee.'" Bergeron, 2013 WL 5874571, at *7 (quoting Sletteland, 260 B.R. at 672 (citations omitted); see also In re Crescent Beach Inn, 22 B.R. 155, 159 (Bankr.D.Me. 1982) (holding that the debtor's mismanagement, which was due to its lack of sophistication, did not constitute gross mismanagement required under § 1104(a)(1), particularly in the absence of any signs of postpetition mismanagement). "This reluctance is attributable to the fact that some degree of mismanagement or misconduct exists in virtually every insolvency case." Bergeron, 2013 WL 5874571, at *9 (internal citations omitted); see Sletteland, 260 B.R. at 672 ("Some degree of mismanagement exists in virtually every insolvency case...mere mismanagement does not, by itself constitute cause. The philosophy of chapter 11 is to give the debtor a 'second chance' at business success."); Crescent Beach Inn, 22 B.R. at 159 (evidence that the debtor's mismanagement of its affairs, including numerous overdrawn checks, inadequate and "messy" bookkeeping, lapses in insurance coverage and failure to file the requisite reports with the United States Trustee, "did not rise to the level of gross mismanagement").

21.    Gross mismanagement, on the contrary, "suggests some extreme ineptitude on the part of management to the detriment of the organization .... ris[ing] above simple mismanagement to achieve the level envisioned by the Code." In re Sundale, Ltd., 400 B.R. 890, 907 (Bankr.S.D.Fla. 2009) (citation omitted).

22.    The extraordinary circumstances warranting appointment of a trustee "are those in which the debtor or its managers have engaged in serious fraud or dishonesty, or have grossly

mismanaged the business." <u>Davis</u>, 2010 WL 2640587, at *2 (citations and alterations omitted); <u>Tanglewood Farms</u>, 2011 WL 606820, at *2 (refusing to appoint a chapter 11 trustee based on its finding that the prepetition fraudulent ruse perpetrated by the debtor's president and sole shareholder "d[id] not rise to the level of gross mismanagement or fraud.").

23.     "Mere allegations, which are contested, that a debtor or its management have engaged in fraud, dishonesty or other similar conduct are not sufficient to warrant appointment of a trustee." <u>Bergeron</u>, 2013 WL 5874571, at *7 (finding that the mismanagement and misconduct at issue, which culminated in the debtor being held in civil contempt for willfully disobeying a temporary restraining order and preliminary injunction in the state court action, were responses to the creditor's "scorched earth" strategy and are not sufficient to constitute cause) (citing <u>In re Piedmont Center Invs., LLC</u>, No. 11–06178, 2011 WL 5903398, at *3–4 (Bankr.E.D.N.C. Sept. 8, 2011)); <u>Hamilton</u>, 2012 WL 2204904, at *3; <u>In re Concord Coal Corp.</u>, 11 B.R. 552, 553 (Bankr.S.D.W.Va. 1981) (holding that appointment of a trustee is not warranted where "fraud and dishonesty have been alleged but not proven").

24.     The debtor's management in <u>Tanglewood Farms</u>, which operated its granary storage facility, sold commingled grain and utilized a bank account opened in the name of a separate entity, allowing proceeds received from the sale of grain to be diverted from the debtor's largest lien creditor. <u>Id.</u> at *1. Despite the existence of this fraudulent scheme, the court could not find that any creditor suffered actual harm as a result. <u>Id.</u> at *2. The court further recognized that if a trustee were to be appointed, "he or she would largely ratify the [postpetition] decisions already made by the debtor[ ] and the Chief Restructuring Officer." <u>Id.</u> In reaching its conclusion—that a chapter 11 trustee was not necessary—the court opined:

> Bankruptcy courts are generally reluctant to displace the management and control of the debtors' business unless extraordinary circumstances warrant it. There is no justification

here for disrupting the debtors' business. Appointment of a chapter 11 trustee will only result in unnecessary expense and costs to the detriment of the debtors' remaining creditors.

Id.

25.     By contrast, the court in <u>Piedmont Center Investments</u> found "sufficient evidence of pre-petition fraud to meet the high standard associated with appointment of chapter 11 trustee." 2011 WL 5903398, at *4. In that case, the partial owner and manager of the debtor was indicted by a federal grand jury prior to the petition date, on fifteen felony counts relating to bank fraud, false statements, and identity theft based on representations he made to four separate financial institutions. <u>Id.</u> At *1. Despite appointing a trustee, the court emphasized that "[a]lthough the indictments are primae [sic] facie evidence of fraud, the court would not appoint a trustee on this basis alone." <u>Id.</u> at *4. Specifically, the court found that a letter drafted by the debtor's manager to his spouse, which detailed a twenty-one step process to be undertaken in the future (i.e., post-petition) to fake and financially maximize his own death, "demonstrate[d] a sophisticated ability to concoct a fraudulent scheme and to hide assets." <u>Id.</u>

26.     Here, RWN has clearly not demonstrated cause for appointment of an operating trustee. There is no evidence the Debtor has engaged in any fraud or gross mismanagement or any dishonesty warranting the appointment of a trustee. The Debtor did not commit anything beyond inadvertent or minor instances of alleged mismanagement which, as established above, do not constitute grounds for appointment of a Chapter 11 trustee.

27.     Indeed, RWN's assertions of prepetition mismanagement and misconduct by the Debtor are largely belied by the arbitrator's Award, which concluded the Debtor and his entity RGS had provided an accurate capital accounting regarding the parties' 2280 FDB project

through December 31, 2013, and *denied* eight other of USHA's claims concerning the Debtor and RGS.

28. RWN's allegations regarding the Disputed Finding (Trustee Motion, ¶¶ 14, 42) do not constitute cause for the appointment of a trustee. The Disputed Finding is erroneous for the reasons set forth in the Arbitration Motion. Moreover, as set forth above, "on a motion for the appointment of a trustee, the focus is on the debtor's current activities, not past misconduct…Speculation that a debtor may do something in the future does not overcome the strong presumption that the debtor should be permitted to remain in possession in a Chapter 11 case or justify the additional costs of a trustee." Sletteland, 260 B.R. at 672.

29. RWN's allegations the Debtor diverted some $60,000 of rents in violation of a mortgage (the "JenCo Mortgage") provided as additional collateral for the Ladera Loans (defined below) must be rejected. (See Trustee Motion, ¶¶ 20, 21, 43). It is undisputed the Debtor is the sole member and manager of JenCo 121 LLC ("JenCo"), and that JenCo is the owner of the vacant real property located at 311 West 121st Street, Block 1948, Lot 24, New York, New York ("Lot 24"). The JenCo Mortgage is a collateral mortgage granted by JenCo to RWN to secure the indebtedness that was owed by Ladera to RWN under the August 28, 2015 loans (the "Ladera Loans"). Ladera's assets (the "Ladera Assets") were sold by credit bid to RWN in a section 363 sale approved by this Court in the Ladera Case, and RWN filed the RWN Deficiency Claim against the Debtor in this case on the Debtor's Guaranty, in the amount of $10,709,240. As demonstrated in the Debtor's pending Claim Objection, the deficiency is $0 and therefore, the RWN Deficiency Claim must be expunged and all security interests, pledges and guarantees securing the Ladera Loans, including the JenCo Mortgage, should be discharged and cancelled. In view of the foregoing, the Debtor did not violate the assignment of rents provision; RWN is

not entitled to any of the approximately $70,000 in payments made by Bestrow Realty in connection with the latter's access agreement with JenCo, as RWN contends. RWN's letters regarding this matter are annexed hereto as **Exhibit "A",** and the Debtor's response to RWN is annexed hereto as **Exhibit "B."** The payments allegedly diverted by the Debtor were made when the Debtor either believed in good faith the loan indebtedness due to RWN (1) would be paid off through a sale or exit refinancing (as to the initial payment in July 2017), or (2) had in fact been satisfied in full upon the section 363 sale to RWN and/or its affiliate, and that therefore RWN's collateral, including the JenCo Mortgage, should have been cancelled.

30.     All of RWN's allegations set forth in paragraph 16 of the Trustee Motion are false and unsubstantiated, and should be disregarded. See Bergeron, 2013 WL 5874571, at *7 ("Mere allegations, which are contested, that a debtor or its management have engaged in fraud, dishonesty or other similar conduct are not sufficient to warrant appointment of a trustee.").

31.     RWN disingenuously accuses the Debtor of failing to communicate a certain offer that Level Investments ("Level") made on October 26, 2017 to purchase Lot 24 for $3 million. (Trustee Motion, ¶¶ 22-23, 44). To the contrary, the evidence shows that Level made that offer to the Debtor and RWN at the same time. (See **Exhibit "C"** hereto). Thus, RWN had notice of Level's offer and there was no need for the Debtor to convey same to RWN.

32.     RWN disingenuously rebukes Futterman for allegedly failing to communicate with creditors in the Ladera Case. (Trustee Motion ¶¶ 28-29). Futterman did not fail to communicate any significant fact to RWN, and was in frequent contact with RWN at all relevant times in the Ladera Case. The evidence will demonstrate the Debtor exchanged over two hundred (200) emails with Jon Singer and Phil Min, representatives of the Lender, during the Ladera Case.

33.     RWN correctly points out that certain of the Debtor's interests in business entities were omitted by his initial bankruptcy counsel from his original bankruptcy schedules and amended bankruptcy schedules filed on December 19, 2017. (Trustee Motion, ¶ 25). These omissions were a minor oversight and have since been remedied. As to SoHa Manager Owner LLC (NY), RWN was well aware of the Debtor's 100% interest in that entity.  In fact, such entity appears on the organizational chart that RWN has possessed since March 2014 and which is reproduced in paragraph 11 of the Trustee Motion.  (RWN's assertion the Debtor owns an interest in SoHa Terrace Manager Corp. is not correct, as indicated on the organizational chart.) The Debtor's entity Next City Development LLC is a general contracting company that is inactive and has few assets. The Debtor also owns a 75% membership interest in Urban Hyena Productions LLC which is an entity with no assets formed in connection with Debtor's writing of scripts or screenplays. The Debtor's interest in Hyena has no value. The Debtor filed an Amended Schedule A/B [ECF No. 62] and an Amended Statement of Financial Affairs [ECF No. 63] disclosing the Debtor's above-described business interests. The Debtor did not deliberately conceal these or any other assets from RWN, creditors or the Court.

34.     The Debtor's noncompliance with Bankruptcy Rule 2015.3 was also inadvertent and has been remedied. [See ECF No. 65]

35.     The Trustee Motion discusses the payment of legal fees by the Debtor's father, Lewis Futterman.  (Trustee Motion, ¶¶ 26, 48).  However, these payments were disclosed; a Lar Dan Affidavit was filed with the retention papers of Debtor's prior counsel Shafferman and Feldman LLP and with the retention papers of the Debtor's current undersigned counsel; the U.S. Trustee had no opposition to the retention of either counsel; and the Court approved both retentions.

36. RWN's remaining contentions in support of the appointment of a trustee are immaterial and provide no basis for the relief sought.

37. Based on the foregoing, the Debtor has not engaged in any prepetition or postpetition conduct which could possibly establish cause to appoint a trustee.

**B.     THE §1104(a)(2) STANDARDS WEIGH AGAINST APPOINTMENT OF A TRUSTEE**

38. RWN erroneously argues the appointment of a Chapter 11 trustee is in the best interest of creditors. The Debtor submits that a review of the facts and the law militate strongly against appointment of a trustee.

39. "The 'interests' standard suggests a balancing of costs and benefits in determining whether the appointment of a trustee is appropriate. Such an appointment would be in the interests of the estate if the benefits to all interests of the estate to be derived from a trustee outweigh the detriment to the estate." Bergeron, 2013 WL 5874571, at *9.

40. Here, there has been no showing that any entity other than RWN and its affiliates (which have no valid claims against the Debtor) would benefit from the appointment of a trustee. The Debtor has been working very diligently toward maximizing the value of the estate, including through a sale of Lot 24 owned by Debtor's affiliate JenCo, as discussed below, and through his pursuit in the Arbitration Motion of the appointment of an independent third party to manage FDB to conduct an orderly and efficient sale of FDB's remaining assets, consisting of five residential condominiums, a retail unit and a community facility unit (collectively, the "Unsold Condos").

41. Additionally, the Debtor is current on his monthly operating reports and all other duties and obligations as a debtor in possession.

42.     The Debtor has made significant progress during his three (3) short months in Chapter 11. He has taken all reasonable actions under the circumstances of this case to prosecute the Chapter 11 case, and will be able to file a confirmable plan within a reasonable amount of time or seek dismissal of this Chapter 11 case after resolving the Claim Objection.

43.     All of the evidence suggests the costs accompanying appointment of a Chapter 11 trustee would impose a substantial financial burden on the Debtor and the estate. An operating trustee would have a very steep learning curve which would slow down and complicate the sale of JenCo's Lot 24 and the Unsold Condos owned by 2280 FBD, to the detriment of Debtor's legitimate creditors. Additionally, any trustee (whether in Chapter 11 or Chapter 7) would undoubtedly retain a law firm that would add an additional layer of administrative costs, to the detriment of creditors.

44.     With the assistance of counsel, the Debtor is fully capable and has complied with the duties, obligations and reporting requirements imposed upon him by Chapter 11 of the Bankruptcy Code. See Bergeron, 2013 WL 5874571, at *9; 7 *Collier on Bankruptcy* ¶ 1104.02[3][d][ii] (recognizing that "[w]hen current management is competent and able to adjust to its new obligations under chapter 11, ... there may in fact be little or no benefit to the appointment of a trustee."). Where, as here, the chapter 11 process is sufficient to protect the interests of the Debtor, the bankruptcy estate and creditors, a chapter 11 trustee is not necessary. See Bergeron, 2013 WL 5874571, at *9; Daily, 2009 WL 3415204, at *3.

45.     RWN has failed to demonstrate that a chapter 11 trustee is necessary in this case pursuant to section 1104(a)(2). Specifically, the allegations presented failed to establish that appointment of a trustee would be in the best interests of any party other than perhaps RWN. See Bergeron, 2013 WL 5874571, at *9.

46.     The Debtor generally has a friendly relationship with the vast majority of his legitimate creditors and does not anticipate creditor support for RWN's Trustee Motion, which is nothing more than a litigation tactic.[5]

47.     For the reasons set forth above, RWN has not established grounds for appointment of a Chapter 11 trustee under section 1104(a)(1) or (a)(2).

**C.     THE §1112(b)(4)(A) STANDARDS WEIGH AGAINST CONVERSION TO CHAPTER 7**

48.     In <u>N.L.R.B. v. Bildisco & Bildisco</u>, 104 S.Ct. 1188, 465 U.S. 513 (1984), in the context of a lease rejection, the Supreme Court held that "the policy of Chapter 11 is to permit successful rehabilitation of debtors."  <u>Id.</u> at 1197, 527. The Court also held that the fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources.  465 U.S. at 1196, 527-528.

49.     "The commencement of a Chapter 11 case should serve as 'an invitation to a negotiation,' the goal being a reorganization under which creditors are repaid using the debtor's going-concern value—or, in the case of an individual Chapter 11 debtor, his future income—rather than assets that typically have significantly less value in liquidation."  <u>In re Johnson</u>, 546 B.R. 83, 129–30 (Bankr. S.D. Ohio 2016).

50.     "[T]he primary purpose of an individual Chapter 11 case is to provide the debtor with a breathing spell so that he can reorganize his debts and provide a recovery to his creditors

---

[5] A review of the claims register confirms the Debtor's Chapter 11 case is either a two party or three party dispute. Only twelve (12) claims were filed prior to the December 27, 2017 bar date. Of these twelve (12) claims, three (3) were filed by purchase money mortgagees which hold first mortgages on real estate owned by the Debtor and his wife such as his primary residence and his vacation home. Three (3) were filed by professional firms who represented the Debtor and/or his affiliates. The Debtor will be able to work out payment arrangements with these professionals. Of the remaining six (6) claims, one (1) is filed by the IRS which the Debtor will pay, one (1) consists of the RWN Deficiency Claim, one (1) is a $16,000 claim filed by American Express, one (1) claim was filed by an investor in 2280 FDB which had its equity converted to debt as part of a refinancing transaction and the other two (2) claims were filed by the minority investors  ("USHA") in 2280 FDB

out of his future earnings rather than a lesser recovery through liquidation of his assets." <u>In re</u> <u>Johnson</u>, 546 B.R. 83, 143 (Bankr. S.D. Ohio 2016).

51.     In considering a motion to convert a case under section 1112(b), the bankruptcy court must always be mindful that Chapter 11 was designed to provide economically distressed entities with a mechanism for rehabilitating. <u>In re Austin Ocala, Ltd.</u>, 150 B.R. 279 (Bankr. M.D. Fla. 1993). "A court should not precipitously sound the death knell for a debtor by prematurely determining that a debtor's prospects for economic revival are poor." <u>In re Shockley Forest</u> <u>Industries, Inc.</u>, 5 B.R. 160, 162 (Bankr. N.D. Ga. 1980). In addition, given the rehabilitative purpose of Chapter 11, all doubts are to be resolved in favor of the debtor. <u>In re Macon</u> <u>Prestressed Concrete Co.</u>, 61 B.R. 432, 436 (Bankr. M.D. Ga. 1986).

52.     Conversion is a "drastic measure" and the movant bears the burden of proving that the relief requested is "warranted and not premature." <u>In re Sal Caruso Cheese, Inc.</u>, 107 B.R. 808, 817 (Bankr.N.D.N.Y.1989). The initial burden to demonstrate "cause" under section 1112(b) lies with the movant, and the burden must be shown by a preponderance of the evidence. <u>See</u> <u>In re The Adbrite Corp.</u>, 290 B.R. 209 (Bankr. S.D.N.Y. 2003); <u>In re Lizeric Realty Group</u>, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995). RWN has not carried its burden of proof to establish "cause."

53.     Section 1112(b) sets forth the standards for the conversion or dismissal of a Chapter 11 case. RWN specifically relies upon section 1112(b)(4)(A), which requires "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," as the legal basis for the conversion aspect of the Trustee Motion. See Trustee Motion, ¶ 60. Section 1112(b)(4)(A) requires "substantial" or continuing loss and

the absence of a reasonable likelihood of rehabilitation. See <u>Products International Company</u>, 395 B.R. 101 (Bankr. D. Ariz. 2008). RWN has not established either of these requirements.

**A.**     <u>**The Debtor Has Not Had Substantial or Continuing Losses**</u>

54.     The Debtor is a real estate developer with impressive previous financial successes. As shown below, the Debtor will receive substantial funds from his business interests in the near future.

55.     None of the indicators of substantial or continuing loss to the bankruptcy estate are present here.[6] There is no substantial negative cash flow since the filing of the bankruptcy case, and the Debtor has been able to meet basic operating expenses.

56.     RWN argues there has been diminution of the estate because the Debtor has utilized, for personal expenses, the $800 cash listed on his Schedules (Trustee Motion, ¶¶7,63). This silly argument evidences the weakness of the Trustee Motion.

**B.**     <u>**The Debtor Has A Reasonable Likelihood of Rehabilitation**</u>

57.     To satisfy the second prong of section 1112(b)(4)(A), a movant must demonstrate that the debtor does not have a reasonable likelihood of rehabilitation. As used in section 1112(b)(4)(A), "rehabilitation means to put back in good condition and reestablish on a sound basis." <u>In re BH S & B Holdings, LLC</u>, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010) *(*citing <u>AdBrite Corp.</u>, 290 B.R. at 216). In addition, the United States Supreme Court has recognized that an individual may reorganize under Chapter 11. See <u>Toibb v. Radloff</u>, 501 U.S. 157, 166, 111 S.Ct. 2197, 115 L. Ed. 2d 145 (1991) ("[Bankruptcy] Code contains no 'ongoing business' requirement for Chapter 11 reorganization").

---

[6]  In any event, a continuing loss or diminution of the estate may be tolerated where, as here, reorganization is feasible, and where the pattern of unprofitable operations can be reversed.  <u>Adbrite Corp.</u>, 290 B.R. 209.

58. RWN suggests the Debtor lacks a reasonable likelihood of rehabilitation because the sole means by which he plans to pay creditor claims is selling estate assets. (Trustee Motion, ¶ 25). This argument must be rejected. The Debtor is on the verge of financially rehabilitating himself, as demonstrated below, and therefore, relief under 11 U.S.C. § 1112(b)(4)(A) is wholly inappropriate. See, e.g. In re Hyatt, 479 B.R. 880, 886 (Bankr. D.N.M. 2012).

59. The Debtor, as sole member of JenCo, has negotiated a contract (the "JenCo Contract") to sell Lot 24 to an affiliated entity, 1485PH LLC, or its designee (the "Purchaser") for Three Million Six Hundred and Fifty Thousand ($3,650,000.00) Dollars (the "Jenco Sale Transaction"). The purchaser executed the JenCo Contract on January 12, 2018 and delivered the $50,000 contract deposit to the escrow agent that same day. The closing of the Jenco Sale Transaction will net in excess of $3 million to the Debtor's estate, proceeds sufficient to pay all legitimate creditors in full or as may be agreed. The Debtor's counsel will soon move for an order authorizing the Debtor, as the sole member of JenCo, to execute the JenCo Contract.

60. The Debtor, as an indirect 80% owner of 2280 FBD, also stands to realize substantial future income from the sale of that entity's remaining seven Unsold Condos. The Debtor's Arbitration Motion seeks an order appointing an independent manager to manage 2280 FDB so that its remaining units can be sold in an orderly fashion and a post-2013 accounting of its books can be performed.

61. As demonstrated above, the Debtor has made significant progress during his three (3) short months in Chapter 11. He has taken all reasonable actions under the circumstances of this case to prosecute the Chapter 11 case, and will be able to file a confirmable plan within a reasonable amount of time.

62.    Based on the above, no cause exists to convert Debtor's case to Chapter 7 under section 1112(b).

**WHEREFORE**, the Debtor respectfully requests this Court deny the Trustee Motion in its entirety and grant the Debtor such other and further relief as the Court deems just and proper.

Dated: New York, New York
       January 16, 2018

                                        **TARTER KRINSKY & DROGIN LLP**
                                        *Attorneys for Hans Futterman*
                                        *Debtor and Debtor-in-Possession*


                                        By:/s/ Scott S. Markowitz
                                            Scott S. Markowitz, Esq.
                                            Robert A. Wolf, Esq.
                                            Jill Makower, Esq.
                                            1350 Broadway, 11th Floor
                                            New York, New York 10018
                                            (212) 216-8000
                                            smarkowitz@tarterkrinsky.com
                                            rwolf@tarterkrinsky.com
                                            jmakower@tarterkrinksy.com