**TARTER KRINSKY & DROGIN LLP**
*Counsel to the Debtor in Possession*
1350 Broadway, 11th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Scott S. Markowitz, Esq.
Robert A. Wolf, Esq.
Jill Makower, Esq.
smarkowitz@tarterkrinsky.com
rwolf@tarterkrinsky.com
jmakower@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

HANS FUTTERMAN,

                              Debtor.
-------------------------------------------------------------x

Chapter 11

Case No.: 17-12899 (MEW)

**DEBTOR'S PLAN OF**
**REORGANIZATION DATED APRIL 16, 2018**

# TABLE OF CONTENTS

I INTRODUCTION .................................................................................................................1

II DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ....................1

    A.  Definitions…………………………………………………………………………...1
    B.  Interpretation, Rules of Construction, Computation of Time, and Choice of Law ...............................8

III DESIGNATION OF CLASSES OF CLAIMS.................................................................9

    A.  Class 1 – TD Bank's Secured Claim ......................................................................10
    B.  Class 2 – U.S. Bank National Association as Trustee's Secured Claim .................10
    C.  Class 3 – People's United Bank, N.A.'s Secured Claim..........................................10
    D.  Class 4 – Harlem Mann LLC's Secured Claim ......................................................10
    E.  Class 5 – Unsecured Claims ...................................................................................10

IV TREATMENT OF CLASSES OF CLAIMS AND UNCLASSIFIED CLAIMS ...........10

    A. Unclassified Claims ................................................................................................10
    B. Treatment of Class 1 Secured Claim of TD Bank ..................................................12
    C. Treatment of Class 2 Secured Claim of U.S. Bank National Association as Trustee ...........12
    D. Treatment of Class 3 Secured Claim of People's United Bank, N.A......................13
    E. Treatment of Class 4 (Mann Claim) .....................................................................13
    F. Treatment of Allowed Class 5 Unsecured Claims…………………………………14
    G.  Controversy with Respect to Impairment…………………………………………14

V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...........15

    A.  Treatment of Executory Contracts and Unexpired Leases......................................15

VI MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ....................15

    A.  Funding of the Plan ................................................................................................15
    B.  Transfer Taxes .......................................................................................................16

VII OBJECTIONS TO CLAIMS AND PROCEDURES FOR RESOLVING AND TREATING CLAIMS ....16

    A.  Objections to Claims ..............................................................................................16
    B.  Resolution of Disputed Claims ..............................................................................16
    C.  Estimation ..............................................................................................................16
    D.  Allowance of Disputed Claims ..............................................................................16

VIII PROVISIONS CONCERNING CAUSES OF ACTION .............................................17

IX PROVISIONS GOVERNING DISTRIBUTIONS .........................................................17

    A.  Disbursing Agent ...................................................................................................17
    B.  Unclaimed Distributions ........................................................................................17
    C.  Professional Fees and Expenses .............................................................................18
    D.  Rounding ................................................................................................................18

X PLAN INJUNCTION AND VESTING OF PROPERTY ................................................18

XI CRAM DOWN ................................................................................................................19

XII RETENTION OF JURISDICTION...............................................................................20

    A.  Retained Jurisdiction ..............................................................................................20

XIII NOTICES......................................................................................................................21

**XIV MISCELLANEOUS PROVISIONS** ...................................................................................................**22**

    **A.  Applicable Law** ..........................................................................................................**22**

    **B.  Unenforceability of Particular Provisions** ..............................................................**22**

    **C.  Revocation and Withdrawal Prior to Confirmation** ..............................................**22**

    **D.  Amendment and Modification** ..................................................................................**22**

    **E.  Post-Confirmation Professional Fees** .....................................................................**23**

    **F.  Binding Effect of Plan** ..............................................................................................**23**

## I

## <u>INTRODUCTION</u>

Hans Futterman, debtor and debtor-in-possession (the "<u>Debtor</u>"), hereby proposes the following plan of reorganization (the "<u>Plan</u>") for the resolution of the Debtor's outstanding Creditor Claims (as hereinafter defined).  Reference is made to the Debtor's disclosure statement dated April 16, 2018 (the "<u>Disclosure Statement</u>"), for a discussion of the Debtor's history, business, assets and results of operations and a summary and analysis of this Plan and certain related matters.

All holders of Claims entitled to vote to accept or reject this Plan are encouraged to review the Disclosure Statement and this Plan before voting to accept or reject this Plan.  To the extent that this Plan is inconsistent with the Disclosure Statement, the terms of this Plan will govern.  No materials other than the Disclosure Statement and exhibits and schedules attached thereto or referenced therein have been approved by the United States Bankruptcy Court for the Southern District of New York for use in soliciting acceptances or rejections of this Plan.

## II

## <u>DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION</u>

In addition to those capitalized terms that are defined in other Articles of the Plan, the following terms (that appear in this Plan as capitalized terms) have the following meanings as used in this Plan.

1.      **"123rd Street Property"** means 254 West 123rd Street, Garden New York, NY 10027.

2.      **"2280 FDB"** means 2280 FDB LLC.

3.      **"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and

necessary costs and expenses of preserving the Debtor's estate, operating the Debtor's business, all compensation and reimbursement of expenses of professionals allowed by the Bankruptcy Court under §§ 330, 331 and 503 of the Bankruptcy Code.

4.      **"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

5.      **"Allowed Claim"** means a Claim against the Debtor to the extent that the Claim is allowed pursuant to this Plan, or (a) a proof of such Claim was (i) timely Filed; or (ii) deemed timely Filed under applicable law or by reason of an order of the Bankruptcy Court; and (b)(i) after the applicable deadlines for filing an objection to the Claim in accordance with this Plan has passed, the Debtor has not Filed an objection or any such objection is withdrawn following the expiration of such applicable deadline(s); (ii) the Claim is allowed (but only to the extent allowed) by a Final Order, or (iii) the Claim is a Claim that was Scheduled by the Debtor in accordance with Rule 1007 of the Bankruptcy Rules and not listed as disputed, contingent or unliquidated.  Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered an Allowed Claim if (a) the Claim has been Scheduled; (b) the amount of the Claim specified in any Filed proof of claim equals or is less than the amount of the Claim Scheduled by the Debtor as other than disputed, contingent or unliquidated; (c) the priority of the Claim specified in any Filed proof of claim is of an equal or more junior priority than the priority of the Claim Scheduled by the Debtor; and (d) the Claim has not been Scheduled as disputed, contingent or unliquidated.

6.      **"Allowed Class Claim"** means an Allowed Claim in the particular class described.

7.      **"Bankruptcy Code"** means title 11 of the United States Code, as the same was in effect on the Petition Date, as amended from time to time.

8.  **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or such other Court as may hereafter be granted jurisdiction over the Chapter 11 Case.

9.  **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, and the guidelines and requirements of the Office of the United States Trustee for the Southern District of New York, as each may from time to time be in effect and applicable to the Reorganization Case and proceedings therein.

10.  **"Bar Date"** means December 27, 2017, which was the deadline to file proofs of Claim in this Chapter 11 Case as provided by order of the Bankruptcy Court or any other deadline to file proof of claims set by the Bankruptcy Court or agreed to by the Debtor.

11.  **"Business Day"** means any day other than a Saturday, Sunday, or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

12.  **"Cash"** means lawful currency of the United States and cash equivalents.

13.  **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

14.  **"Chapter 11 Case"** means the Debtor's Chapter 11 Case for reorganization under Chapter 11 of the Bankruptcy Code, Case Number 17-12899 (MEW) entitled *In re: Hans Futterman* now pending in the Bankruptcy Court.

15.  **"Claim"** means a claim against the Debtor or its property as defined in Section 101(5) and construed in Section 102(2) of the Bankruptcy Code.

16.  **"Claimant"** means the holder of a Claim.

17.  **"Claims Register"** means the list of Claims filed against the Debtor as maintained by the Clerk of the Court.

18.  **"Class"** means a group of Claims consisting of Claims which are substantially similar to each other as classified pursuant to this Plan.

19.    **"Clerk of the Court"** means the Clerk of the United States Bankruptcy Court for the Southern District of New York with a street address at United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004.

20.    **"Confirmation"** means entry, within the meaning of Bankruptcy Rules 5003 and 9021, of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

21.    **"Confirmation Date"** means the date upon which the Confirmation Order is entered in the Bankruptcy Court.

22.    **"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider Confirmation of this Plan.

23.    **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to §1129 of the Bankruptcy Code.

24.    **"Debtor"** means Hans Futterman

25.    **"Debtor's Case"** shall have the same meaning as Chapter 11 Case herein.

26.    **"Debtor-in-Possession"** means Hans Futterman, as debtor-in-possession in this Chapter 11 Case.

27.    **"Disbursing Agent"** shall mean Reorganized Debtor, or such other entity as may be designated by the Bankruptcy Court or by this Plan.

28.    **"Disclosure Statement"** means the Debtor's Disclosure Statement to accompany this Plan, and all annexes, schedules or exhibits attached thereto or referenced therein, that relate to this Plan and that is approved by the Bankruptcy Court pursuant to §1125 of the Bankruptcy Code.

29.    **"Disputed Claim"** means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense, as the case may be, has been filed with the Court or deemed filed under

applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.  Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules; (ii) any corresponding Claim has been listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

30.    **"Distribution Dates"** means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to this Plan.

31.    **"Distributions"** means the payments of Cash to creditors and others (e.g., Professional Persons) pursuant to and required by this Plan and, as context requires, issuance of Equity Interests.

32.    **"Effective Date"** means the fifteenth (15) day after entry of the Confirmation Order.

33.    **"Estate"** means the estate created in a Chapter 11 Case under §541 of the Bankruptcy Code.

34.    **"Executory Contract"** means each agreement, contract or unexpired lease to which any Debtor is a party and which is executory within the meaning of §365 of the Bankruptcy Code.

35.    **"Face Amount"** means, with respect to any Claim, (a) if the holder of such Claim has not timely filed a proof of Claim thereof with the Bankruptcy Court, the amount, if any, of such Claim Scheduled and not listed as disputed, contingent or unliquidated; (b) if the holder of such Claim has timely filed proof thereof with the Bankruptcy Court, and the Debtor has not

filed an objection, the amount stated in such proof; or (c) if a Claim has become an Allowed Claim pursuant to a Final Order, the amount of such creditor's Allowed Claim.

36.    **"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed, and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

37.    **"Governmental Unit"** shall have the meaning set forth at §101(27) of the Bankruptcy Code.

38.    **"Mann Claim"** means Harlem Mann LLC's Claim filed in the Court's Claims Register as Claim No. 2 on November 21, 2017 in the amount of $1,618,650.

39.    **"Ladera Chapter 11 Case"** means collectively the jointly administered chapter 11 cases of Ladera Parent LLC and Ladera LLC, Case No: 16-13382 and 16-13383.

40.    **"Lien"** means any charge against, or interest in, property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust or statutory lien.

41.    **"Person"** shall have the meaning ascribed to such term in §101(41) of the Bankruptcy Code.

42.    **"Petition Date"** means October 17, 2017, the date the Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court.

43.    **"Plan"** means this plan of reorganization, as altered, amended or modified from time to time, and all attachments and exhibits thereto and shall constitute a separate Plan for each of the Debtor.

44.      **"Pine Bush Property"** means 1 Burlingham Road, Pine Bush, NY 12566.

45.      **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

46.      **"Priority Tax Claim"** means a Claim by a Governmental Unit entitled to priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

47.      **"Professional"** or **"Professional Person"** means all attorneys, accountants, consultants or other Persons retained under an order of the Court on behalf of the Debtor in accordance with Section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to Sections 327, 328, 330 and 331 of the Bankruptcy Code.

48.      **"Reorganized Debtor"** shall mean the Debtor on or after the Effective Date and may refer to such Debtor by name as defined herein.

49.      **"RWN"** shall mean RWNIH-DL 122nd Street 1 LLC.

50.      **"RWN Claim"** means RWN's Claim filed in the Court's Claims Register as Claim No. 3 on December 12, 2017 in the amount of $10,729,240.

51.      **"Scheduled"** means as set forth in the Schedules.

52.      **"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor as required by Section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as the same have been or may be amended from time to time.

53.      **"Secured Claim"** means a Claim that is either (a) secured by a valid perfected and enforceable Lien on property of the Debtor that is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value as set forth in an Allowed Claim or as determined by Final Order in accordance with Section 506(a) or 1111(b) of the Bankruptcy Code, of the interest of the claimant in the Debtor's property securing

such Claim, or (b) for which the holder asserts a valid setoff under Section 553 of the Bankruptcy Code.  To the extent that the amount claimed by the holder of a Secured Claim exceeds the value (as determined by the Court pursuant to Section 506 of the Bankruptcy Code and Bankruptcy Rules 3012, 7001 and 9014 or as otherwise agreed to by the holder of such Claim and the Debtor) of the property securing such Claim, the holder of such Secured Claim shall have a Deficiency Claim equal to the amount of the excess.

54.    **"Unit D"** means the condominium unit known as 265 West 122nd Street, New York, NY, Unit D

55.    **"Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

**B.**    **Interpretation, Rules of Construction, Computation of Time, and Choice of Law**

In the event of a conflict between this Plan and the Disclosure Statement, the contents of this Plan shall control over the contents of the Disclosure Statement.  The provisions of the Confirmation Order shall control over the contents of this Plan.

Any term used in this Plan that is not otherwise defined in this Plan either in Article II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules.  Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. The definitions and rules of construction contained herein shall also apply to the Disclosure Statement and to the exhibits to this Plan except to the extent expressly so stated in the Disclosure Statement or in each particular exhibit to this Plan.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in

this Plan.    The word "including" shall mean "including, without limitation" and shall be interpreted in accordance with Section 102(3) of the Bankruptcy Code.

Any reference in this Plan to an existing document or exhibit means such document or exhibit, as it may have been amended, restated, modified, or supplemented as of the Effective Date.

Captions and headings to Articles, Sections, Subsections, and Clauses in this Plan are inserted for convenience of reference only and shall neither constitute a part of this Plan nor in any way affect the interpretation of the provisions hereof.

Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when they are filed.

Subject to the provisions of any contract, certificate, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules.

### III

### <u>DESIGNATION OF CLASSES OF CLAIMS</u>

The following is a designation of the Classes of Claims under this Plan.  Administrative Claims (including fees and expenses of Professional Persons allowed in a Final Order of the Bankruptcy Court),  Priority Claims and  statutory fees due to the United States Trustee have not been classified and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.  A Claim is classified in a particular Class only to the extent

that the Claim qualifies within the description of that Class and is classified in a different Class

to the extent that any remainder of the Claim qualifies within the description of such different

Class.

**A.**     **Class 1 – TD Bank's Secured Claim**

Class 1 consists of TD Bank's first mortgage secured by Unit D.

**B.**     **Class 2 – U.S. Bank National Association as Trustee's Secured Claim**

Class 2 consists of U.S. Bank National Association as Trustee's first mortgage secured by

the 123rd Street Property.

**C.**     **Class 3 – People's United Bank, N.A.'s Secured Claim**

Class 3 consists of People's United Bank, N.A.'s first mortgage secured by the Pine Bush

Property

**D.**     **Class 4 – Harlem Mann LLC's Secured Claim**

Class 4 consists of the Mann Claim.

**E.**     **Class 5 – Unsecured Claims**

Class 5 consists of holders of Unsecured Claims.

**IV**

**TREATMENT OF CLASSES OF CLAIMS
AND UNCLASSIFIED CLAIMS**

**A.**     **Unclassified Claims**

**1.**     **United States Trustee Fees**

All fees payable by the Debtor under Section 1930 of Title 28 of the United States Code

that have not been paid prior to the Effective Date shall be paid by the Debtor, the Reorganized

Debtor or the Disbursing Agent on the Effective Date.  In addition, the Debtor, or any successor

thereto by merger, consolidation or otherwise, on or after the Effective Date, shall be liable for,

and the Disbursing Agent on behalf of the Reorganized Debtor shall pay, such fees until the

entry of a final decree in this case or until the case is converted or dismissed. The Disbursing

Agent shall file post-confirmation operating reports with the Bankruptcy Court and the United

States Trustee until a final decree is entered.

**2.    Administrative Claims**

**(a)    Generally**

Except as provided otherwise in this Article IV of this Plan, each holder of an

Allowed Administrative Claim (*including*, without limitation, the fees and expenses incurred by

Professional Persons) allowed by a Final Order of the Bankruptcy Court) and Allowed

Administrative Claims arising under Bankruptcy Code §503(b)(9)) shall be paid in full, in Cash,

by the Debtor, the Reorganized Debtor, or the Disbursing Agent (i) on the later to occur of the

Effective Date or the date the order allowing such Administrative Claim becomes a Final Order,

or (ii) upon such other terms as may exist in the Debtor's or the Reorganized Debtor's ordinary

course of business; or (iii) upon such terms as may exist pursuant to Order of the Bankruptcy

Court or an agreement between such Allowed Administrative Claimholder and the Debtor or

Reorganized Debtor.

**(b)    Accounts Payable and Other Obligations Which Arose Post-Petition**

Administrative Claims representing obligations incurred by the Debtor or the

Reorganized Debtor after the Confirmation Date shall not be subject to application to the

Bankruptcy Court and may be paid by the Reorganized Debtor in the ordinary course of business

and without further Bankruptcy Court approval.

**(c)    Professional Fees and Expenses**

As more fully set forth herein, after the Confirmation Date, the Reorganized

Debtor shall, in the ordinary course of business and without the necessity for any approval by the

Court, pay the reasonable fees and expenses of the Professional Persons employed by the

Reorganized Debtor in connection with the implementation and consummation of this Plan, the

claims reconciliation process and any other matters as to which the Reorganized Debtor shall engage or retain such Professional Persons.  The fees and expenses of such Professional Persons shall be submitted monthly to the Reorganized Debtor by such Professional Persons in the form of a detailed invoice therefor, and shall be paid by the Disbursing Agent within ten (10) Business Days after such submission.  If the Reorganized Debtor disputes the reasonableness of any such invoice within the lesser of (a) ten (10) days of receipt of such proposed fees or (b) fourteen (14) days after transmittal to the Reorganized Debtor, the Disbursing Agent shall timely pay the undisputed portion of such invoice, and the Reorganized Debtor, or the affected Professional Person may, after attempting to resolve the dispute, submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

B.      **Treatment of Class 1 Secured Claim of TD Bank**

Class 1 is unimpaired under the Plan and not entitled to vote for or against the Plan. The holder of the Class 1 Claim shall retain the legal, equitable, and contractual rights to which TD Bank is entitled to under the applicable loan documents and mortgage. Notwithstanding any contractual provisions that entitles TD Bank to demand or receive accelerated payments of such claim after the occurrence of a default, TD Bank's Allowed Claim may be satisfied by (i) the curing of any payment or performance defaults that occurred before or after the commencement of the Debtor's chapter 11 filing, (ii) the reinstatement of the original maturity of such claim, (iii) compensation for any damages incurred as result of any reasonable reliance by the TD Bank on such contractual provisions, and  (iv) does not "otherwise alter the legal, equitable or contractual rights" of TD Bank.  TD Bank shall retain its lien on Unit D to the same extent and priority as existed on the Petition Date.

C.      **Treatment of Class 2 Secured Claim of U.S. Bank National Association as Trustee**

Class 2 is unimpaired under the Plan and not entitled to vote for or against the Plan. The holder of the Class 2 Claim shall retain the legal, equitable, and contractual rights to which U.S.

Bank National Association as Trustee is entitled to under the applicable loan documents and mortgage. Notwithstanding any contractual provisions that entitles U.S. Bank National Association to demand or receive accelerated payments of such claim after the occurrence of a default, U.S. Bank National Association's Allowed Claim may be satisfied by (i) the curing of any payment or performance defaults that occurred before or after the commencement of the Debtor's chapter 11 filing, (ii) the reinstatement of the original maturity of such claim, (iii) compensation for any damages incurred as result of any reasonable reliance by the U.S. Bank National Association on such contractual provisions, and (iv) does not "otherwise alter the legal, equitable or contractual rights" of U.S. National Association as Trustee. U.S. Bank National Association shall retain its lien on 123rd Street Property to the same extent and priority as existed on the Petition Date.  .

**D.**       **Treatment of Class 3 Secured Claim of People's United Bank, N.A.**

The Class 3 Claim is impaired as the Plan proposes to alter the terms, conditions and payment schedule for People's United's claim over a three year period.  People's United is to be paid the full amount of its claim plus interest at 5.5% as follows. Beginning on the first day of the third month following the Effective Date the Reorganized Debtor will make payments of $3,000 per month to People's United for 36 months from the first payment as set forth above and on or before the first day of the 40th month from the Effective Date, the Reorganized Debtor shall pay the balance of People's United's Secured Claim by either a sale and/or refinance the Pine Bush Property.  Class 3 Claim is entitled to vote for or against the Plan.

**E.**       **Treatment of Class 4 (Mann Claim)**

The Mann Claim shall be deemed an Allowed Secured Claim, secured only to the extent of any interest which Mann has in the Debtor's property pursuant to the promissory note and any related agreements and the UCC financing statement attached to the Mann Claim. The Mann Claim shall be paid as follows. On the Effective Date, the Debtor shall pay $100,000 to Mann. The

remaining $900,000 shall be paid to Mann from the distributions received from RGS on account of the proceeds of the liquidation of the remaining assets of 2280 FDB.  Payments to Mann shall be made at the time the Debtor receives such distributions and shall consist of at least twenty five percent (25%) of each such distribution until the $900,000 has been fully paid. No interest shall accrue on the Mann Claim.  Class 4 Claim is impaired and entitled to vote for or against the Plan.

F.    **Treatment of Allowed Class 5 Unsecured Claims**

Holders of Allowed Class 5 Claims shall be paid in full with post-petition interest from the Petition Date at 3% per year over a period of three years from the Effective Date assuming the RWN Claim is expunged.  The Debtor will obtain the funds to pay Allowed Class 5 Claims from distributions received through RGS from the liquidation of the remaining assets of 2280 FDB. In the event the RWN Claim is determined to be an Allowed Claim by Final Order at an amount of $5 million or more, the Plan will be deemed modified to provide that holders of Allowed Class 5 Claims shall be paid in full plus post-petition interest from the Petition Date at 3% per annum over a period of five years. These payments shall be made from the distributions received through RGS from the liquidation of the remaining assets of 2280 FDB and liquidation or refinancing of other assets if and as necessary.  Holders of Allowed Class 5 Claims and the Reorganized Debtor may agree to less favorable payment terms and such agreement is only binding if in writing executed by the Reorganized Debtor and the holder of such Class 5 Allowed Claim.   Class 5 is impaired as that term is defined in section 1124 of the Bankruptcy Code and entitled to vote for or against the Plan.

G.    **Controversy with Respect to Impairment**

In the event of a controversy as to whether a holder of a Claim is impaired, the Court shall, after notice and a hearing, determine such controversy.

V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Treatment of Executory Contracts and Unexpired Leases**

As of the date the Plan is confirmed, unless rejected by a notice of rejection filed and served by the Debtor at least 10 days prior to the initial Confirmation Hearing, any executory contract or unexpired lease of entered into by the Debtor that has not yet been (a) assumed and assigned, or (b) assumed, shall be deemed to be assumed by the Debtor as of the Confirmation Date.  The Confirmation Order shall be deemed an order under § 365(a) of the Bankruptcy Code assuming any such executory contracts or leases of personal property.

VI

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

A.    **Funding of the Plan**

This Plan will be funded primarily from the monies the Debtor receives through the liquidation of 2280 FDB's remaining assets which consist of five residential condominium, a community facility and one retail condominium unit totaling approximately 15,000 sq. ft. The Debtor estimates the value of these assets to be approximately $20 million of which the Debtor indirectly owns 80%.  The Debtor expects a process will soon be put in place for 2280 FDB with respect to a procedure for liquidating 2280 FDB's remaining assets. The Debtor will liquidate and/or refinance additional assets if and as needed.  Ellen is also in the process of selling Unit C at the building located 265 West 122nd Street, New York, New York. Based upon the sale price and the mortgages on this unit, Ellen should receive net proceeds of approximately $500,000 a portion of which she will allow the Debtor to utilize to fund the Plan and pay professional fees as well as cure costs to the holders of the purchase money mortgages on the various pieces of real estate owned by Ellen and the Debtor as set forth above.

**B.**      **Transfer Taxes**

There will be no Transfer Taxes owed on any transaction in connection with or in contemplation of the Plan.

**VII**

**OBJECTIONS TO CLAIMS AND PROCEDURES
FOR RESOLVING AND TREATING CLAIMS**

**A.**      **Objections to Claims**

All objections to Claims shall be filed by the Debtor and served on the holders of such Claims within sixty (60) days after the Confirmation Date. If the objection to a proof of Claim that relates to a Disputed Claim has not been filed by the applicable date, the Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of Distributions under the Plan.

**B.**      **Resolution of Disputed Claims**

Disputed Claims shall be divided into two (2) portions: the "non-disputed portion" and the "disputed portion." The Reorganized Debtor shall pay the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class.

**C.**      **Estimation**

The Debtor or the Reorganized Debtor may, at any time, request that the Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim.  The Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

**D.**      **Allowance of Disputed Claims**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an

Allowed Claim, or as soon thereafter as is practicable, pay to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date.

## VIII

## PROVISIONS CONCERNING CAUSES OF ACTION

The Reorganized Debtor waives the right to commence any claims arising under §§ 544 through 550 of the Bankruptcy Code. The Reorganized Debtor specifically retains any other cause of auction including any claims pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and section 363(n) of the Bankruptcy Code with respect to the Sale Order entered in the Ladera Chapter 11 Case.

## IX

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Disbursing Agent

The Reorganized Debtor shall act as Disbursing Agent under the Plan. Hans Futterman shall be in charge of all matters relating to the Distributions required by the Plan. In the event that the Disbursing Agent changes prior to the, entry of an order of final decree closing the Debtor's Chapter 11 case, the Bankruptcy Court and the United States Trustee shall be notified in writing of the identity and address of the new Disbursing Agent.

### B.    Unclaimed Distributions

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Court, unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

If any holder's Distribution is returned as undeliverable, no further Distributions to such

holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.

**C.      Professional Fees and Expenses**

Each of the Professionals requesting compensation for services rendered and reimbursements disbursed in the Chapter 11 Case shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred through the Confirmation Date within thirty (30) days after entry of the Confirmation Order.

**D.      Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect the rounding of such fraction to the nearest whole cent with the one-half cent being rounded up to the nearest whole cent.

**X**

**PLAN INJUNCTION AND VESTING OF PROPERTY**

**1.      Injunction and Stays**

**Except as otherwise expressly provided herein and related documents, all persons or entities who have held, hold or may hold claims against the Debtor are, with respect to any such Claims, permanently enjoined on and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Reorganized Debtor, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against**

**the Debtor or the Reorganized Debtor, any of his property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entity, or any property of any such transferee or successor, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or the Reorganized Debtor, any of his property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, and (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor or the Reorganized Debtor, any of his property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities.**

      2.      <u>**Vesting of Property in the Reorganized Debtor**</u>

As of the Effective Date, all assets of the Debtor shall vest in the Reorganized Debtor, free and clear of all Liens, Claims and Interests, except as otherwise provided in this Plan or the Confirmation Order.

**XI**

<u>**CRAM DOWN**</u>

In the event Classes of Claims do not vote to accept this Plan, the Debtor reserves its right to invoke the "Cram Down" provisions of Bankruptcy Code §1129(b).  In the event the Debtor exercises such right, the Debtor reserves the right to modify this Plan to the extent, if any, the confirmation of this Plan under §1129(b) of the Bankruptcy Code requires modification.

# XII

# <u>RETENTION OF JURISDICTION</u>

A.      <u>Retained Jurisdiction</u>

From and after the Confirmation Date and until such time as the Chapter 11 Case are closed, the Bankruptcy Court shall retain jurisdiction over the Debtor's Chapter 11 Case for all purposes permitted under the Code, including, without limitation, the following:

1.      To hear and determine any dispute relating to the Plan.

2.      To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Confirmation Date or commenced thereafter.

3.      To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

4.      To hear and determine motions to approve the sale of assets of the Debtor under § 363 of the Bankruptcy Code and/or the rejection or assumption of executory contracts under § 365 of the Bankruptcy Code.

5.      To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case.

6.      To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

7.      To make orders allowing amendment of the schedules filed in the Chapter 11 Case for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

8.      To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

9.      To hear and determine any and all motions to abandon property of the Debtor's

Estate.

10.      To make such other orders or give such directions as permitted by § 1142 of the Bankruptcy Code.

11.      To consider and order any modifications or amendments requested to the Plan.

12.      To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

13.      To make all orders necessary or appropriate to carry out the provisions of the Plan.

14.      To enforce all orders previously entered by the Bankruptcy Court.

15.      To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## XIII

## **NOTICES**

Except as otherwise herein provided, all notices required to be made in or under this Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested:

If to the Debtor or the Disbursing Agent:

> Hans Futterman
> 265 West 122nd Street, Unit D
> New York, New York 10027

With a copy to:                Tarter Krinsky & Drogin LLP
                               1350 Broadway, 11th Floor
                               New York, New York 10018
                               Attn:   Scott S. Markowitz, Esq.

Any person may change the address at which he, she or it is to receive notices for purposes of this Plan by sending written notice pursuant to this provision to the Debtor (or the Disbursing Agent) as provided in this Article.

# XIV

## MISCELLANEOUS PROVISIONS

**A.    Applicable Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under this Plan are governed under New York Law.

**B.    Unenforceability of Particular Provisions**

Should any provision in this Plan be determined to be unenforceable in whole or in part, such determination shall in no way limit or affect the enforceability and operative effect of the remainder of this Plan, including any of its provisions to the extent not determined to be unenforceable.

**C.    Revocation and Withdrawal Prior to Confirmation**

The Debtor reserves the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any claim by or against the Debtor, or any other entity or to prejudice in any manner the rights of the Debtor, or any entity in any further proceedings involving the Debtor.

**D.    Amendment and Modification**

The Debtor may propose amendments to, or modification of, this Plan at any time at or before Confirmation.  After Confirmation of this Plan, the Debtor may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the treatment of any Claim, amend this Plan to remedy any defect or omission or reconsider any inconsistencies in this Plan or in the order of Confirmation as necessary or desirable to carry out the purpose and effect of this Plan**.**

E.      **Post-Confirmation Professional Fees**

Subsequent to the Confirmation Date, the Debtor or the Reorganized Debtor shall be authorized and directed to pay reasonable professional fees and expenses relating to the post-confirmation administration of its estate and this Plan incurred by its Professionals.

F.      **Binding Effect of Plan**

Upon the Effective Date, all of the provisions of this Plan shall be binding on the Debtor, on all holders of Claims, and on all other entities who are affected (or whose interests are affected) in any manner by this Plan.

Dated: New York, New York
       April 16, 2018


                                        By:/s/ Hans Futterman_____
                                           Hans Futterman



                                        **TARTER KRINSKY & DROGIN LLP**
                                        *Attorneys for Hans Futterman*
                                        *Debtor and Debtor-in-Possession*


                                        By: /s/ Scott S. Markowitz_____
                                           Scott S. Markowitz
                                           Rocco A. Cavaliere
                                           1350 Broadway, 11th Floor
                                           New York, New York 10022
                                           (212) 216-8000