UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              :
                                                    :        **Chapter 11**
**HANS FUTTERMAN,**                                 :
                                                    :        **Case No. 17-12899 (MEW)**
                  Reorganized Debtor.               :
---------------------------------------------------------------x

### BENCH DECISION REGARDING OBJECTION TO PROOF OF CLAIM FILED BY JACQUE GUILLET

A P P E A R A N C E S :

TARTER KRINSKY & DROGIN
New York, New York 10018
*Attorneys for Reorganized Debtor Hans Futterman*
   By: Scott S. Markowitz

RICHARD L. YELLEN & ASSOCIATES, LLP
New York, New York 10006
*Attorneys for Claimant Jacque Guillet*
   By: Brendan C. Kombol

**HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE**

     This is the final and official version of a bench ruling that I announced in open court on March 5, 2020.

     The matters presently before the Court have arisen in the Chapter 11 case of an individual debtor, Hans Futterman. More particularly, the matter to be ruled upon today is the objection by Mr. Futterman to a proof of claim filed by an individual named Jacque Guillet. The parties have filed a pre-trial order that describes their legal and factual contentions and that sets forth certain matters about which they agree.

     The dispute arises out of transactions that took place in 2011 and that grew out of efforts by Ladera, LLC, a company that Mr. Futterman owned, to acquire development rights from

1

nearby property owners. A limited liability company named Manhattan Avenue, LLC, which was owned by Mr. Guillet and his wife, had developed a condominium project at 302 West 122d Street. Mr. Futterman was negotiating a deal under which Ladera would acquire development rights and a light-and-air easement from the owners of the 302 West 122d Street project.

At one point in the parties' negotiations it appears that a payment that Ladera was to make in order to acquire the development rights and the light-and-air easement would be paid into escrow and then would be divided, with some part of the payment going to the people who had purchased condominium units at 302 West 122d Street and some going to Manhattan Avenue, LLC. The evidence shows that in 2011 some of the people who had purchased condominium units were unhappy with Manhattan Avenue, LLC and/or with Mr. Guillet personally, and they sought compensation for repair expenses and legal expenses that they had incurred or would incur.

The evidence also shows that Manhattan Avenue, LLC and Mr. Guillet essentially settled their dispute with one owner, named Mr. Sarley, by agreeing that $45,000 dollars of the money that would have been paid to Manhattan Avenue, LLC would instead be paid to the Sarleys. In order to prevent the Sarley objection from holding up the transfer of the development rights, Mr. Futterman and Mr. Guillet made an agreement that is the subject of today's hearing and that also is the subject of an email that Mr. Futterman sent to Mr. Guillet on April 22, 2011.

The subject heading of the April 22, 2011 email was: "302 W 122 Air Rights." As I mentioned above, it is undisputed that it was Ladera (not Mr. Futterman personally) who was negotiating to acquire development rights from the owners of the 302 West 122 project, and it was Ladera (not Mr. Futterman personally) who was the contracting party in the final documents

2

that were executed. The April 22, 2011 email that Mr. Futterman sent to Mr. Guillet, however, stated as follows:

> Per our agreement, since you have agreed to pay the Sarley (owners of unit one at the above-captioned building) $45,000 out of your share of the distribution, I will pay to you or your designee $45,000 within six months of the closing of the transaction to take place on April 25, 2011 when the air rights, ZLDA and other relevant documents are executed to give effect to the Development Rights transfer contemplated. Please mark up the disbursement sheet received to include the Sarley payment from your side and scan and email all documents to me ASAP today with delivery of originals at or by closing on Monday.

Mr. Guillet contends that in a prior oral conversation, and in this email, Mr. Futterman agreed personally to pay to him the $45,000 that Manhattan Avenue, LLC was foregoing as part of its settlement with Mr. Sarley and that only $12,000 of that amount has actually been paid.

Mr. Futterman contends, among other things, that the parties agreed and understood that any obligation to make a payment was an obligation of Ladera (not of Mr. Futterman personally). He notes, among other things, that it was Ladera (not Mr. Futterman) who made a partial $12,000 payment to Mr. Guillet in early 2012. Mr. Futterman also argues that, no matter who the obligor was, there were various conditions to the payment obligation that were not satisfied, so that nothing is owed.

The parties' dispute was the subject of a case filed prior to the bankruptcy in the New York State Supreme Court, index number 652057/2017. The state court case has not been removed to this court, but Mr. Guillet filed a proof of claim in this court after the bankruptcy was filed. The parties have agreed, in the pre-trial order, that I have jurisdiction over the proof of claim and over Mr. Futterman's objection to the claim. They have further agreed that I have core jurisdiction under 28 U.S.C. Section 157(b)(2)(B) and the power to render a final decision, and that even if I did not otherwise have such power they have consented to the entry of a final order

3

and judgment by me.  I believe that in a prior hearing the parties also agreed that my decision today would be *res judicata* as to the claims asserted in the pending New York state-court action.

Today we had an evidentiary hearing to consider the claim and the objection to it.  I received seven exhibits into evidence.  I also heard the live testimony of Mr. Futterman and of Mr. Guillet.  I have reviewed the pre-trial order and the exhibits, and I have considered the testimony of the witnesses and the legal arguments made by counsel, including arguments made by Mr. Guillet's counsel as to certain matters under New York law, and I am now prepared to make my rulings.

I will start by stating that there are certain contentions that the parties have made today that I find to be without merit.

First, Mr. Futterman has contended that any payment obligation, whether it was an obligation owed by Mr. Futterman himself or an obligation of Ladera, was contingent on the ability of Ladera to arrange financing for the project it was going to complete.  The record does not support this contention.  There are indications in text messages, which were submitted as Exhibit 6, that Ladera's financing problems were having an effect on the ability to make payments to Mr. Guillet.  However, I do not find any statement in the exhibits that would support the idea that the obligation itself was contingent on such financing.  To the extent that the witnesses have testified to opposing views on this point, I find the testimony of Mr. Guillet on this particular point to be more credible.

Second, Mr. Futterman has contended that any payment obligation was contingent on an April 25, 2011 closing of the transfer of development rights.  The actual closing did not take place until several months later.  It is true that the April 22, 2011 email referred to an expected closing on April 25, 2011.  However, there is nothing in the exhibits that supports the contention

4

that time was of the essence or that any payment would be contingent on an April 25 closing. Again, to the extent that the witnesses offered opposing testimony on this point, I find the testimony of Mr. Guillet on this particular issue to be more credible.

Third, Mr. Guillet's counsel has argued that the agreement to pay $45,000 was "unrelated" to the purchase of development rights. I gather, although I am not one hundred percent sure, that this argument was made in an effort to explain why Mr. Futterman, individually, might have agreed to make a payment as opposed to why Ladera would make such a payment in connection with Ladera's purchase of the development rights. I will consider the parties' arguments as to whose obligation this was, but I reject the contention that the agreement to pay $45,000 was "unrelated" to the purchase of the development rights. The subject line of the April 22, 2011 email was "302 W 122 Air Rights." It referred to the distribution of the proceeds of the payment that Ladera was going to make at closing for the purchase of development rights. Both Mr. Futterman and Mr. Guillet testified that the reason why the issue was even being discussed was that the Sarley objection was an obstacle to the closing of the sale of the development rights and needed to be resolved so that the sale could close. These facts do not, by themselves, answer the question of who was obligated to make the $45,000 payment, but they do demonstrate quite clearly, and I so find, that the whole purpose of the $45,000 payment was to clear away an obstacle to Ladera's pending purchase of development rights.

Fourth, Mr. Guillet's counsel introduced into evidence a copy of the answer that was filed on Mr. Futterman's behalf in the New York State Supreme Court, and has argued that in that answer Mr. Futterman effectively waived any contention that Ladera is the contracting party, because he allegedly did not assert that defense as an affirmative defense in the New York state court. I find that this contention is both wrong and irrelevant for a number of reasons.

5

First, the state-court pleading rules apply only in the state court. The state-court case remains in that court. The issues in the proceeding that is before me today were framed by the objection that Mr. Futterman filed and by the pre-trial order that the parties submitted. There was nothing secret about Mr. Futterman's contention as to who the contracting party was in his objection. Mr. Guillet was on full notice of that contention and also agreed in the pre-trial order that this was an issue for me to resolve at the evidentiary hearing today.

Second, Mr. Futterman's contention is that he did not make a contract in his own name. His denial of the allegations of the Complaint in the New York state Court were all that was needed to preserve that defense. A denial that Mr. Futterman was obligated under the contract was not an "affirmative defense." If the state-court action had proceeded, then Mr. Guillet and his counsel would have taken discovery and would have had the right to explore the basis of the denial. There is nothing about the denial that would have been likely to take Mr. Guillet by surprise or that otherwise constituted an "affirmative defense" that required further specification under the relevant provisions of section 3018(b) of the New York C.P.L.R. *See* N.Y.C.P.L.R. § 3018(b).

Third, even if I were to regard Mr. Futterman's defenses in the state court as affirmative defenses that needed to be pleaded, it is plain to me that the affirmative defenses that he asserted in the state court were sufficient. The answer was submitted into evidence as Exhibit 7. The second affirmative defense stated that there was "no privity of contract between plaintiff and defendant." The fourth affirmative defense stated that: "To the extent that any agreement was made between the parties", which Mr. Futterman denied, "plaintiff breached the terms and conditions of the alleged agreement and is barred from any recovery as a result of said breach." Those defenses encompass the same objections that have been asserted in this hearing.

Fourth, the proceedings in the state court were stayed when this bankruptcy case was filed. There was no judgment and apparently no note of issue in the state court. Even if there had been any defects in Mr. Futterman's affirmative defenses, he retained the right to seek approval to file amended defenses. In short, the pleading that he filed was not the basis for a judgment and was not the final word on the subject even in the state court. And to the extent that the state court pleadings are relevant at all to the proceedings before me, I note that the contentions set forth in the pretrial order are deemed under the federal rules to have been incorporated in the pleadings. *See* Fed. R. Bankr. P. 7015, 9014; Fed R. Civ. P. 15(b)(2).

Finally, I should note that, in one ironic respect, the argument that Mr. Guillet's counsel has made on this point actually undercuts the defense he asserts. Mr. Guillet's counsel essentially has argued that the pleadings in the state court amounted to some kind of waiver of Mr. Futterman's rights to argue that the contract obligation belongs to Ladera and not to Mr. Futterman. But waiver arguments are classically regarded as affirmative defenses. I require parties to submit a pre-trial order that lists the parties' claims and defenses and the factual and legal matters to be resolved at a hearing, and there is no reference in the pre-trial order to any alleged waiver of contentions by Mr. Futterman.

For all of these reasons, I find the waiver defense to be without merit. I will consider Mr. Guillet's contentions that the state-court pleading is a prior statement by Mr. Futterman and whether it undercuts the credibility of what Mr. Futterman is contending in this proceeding, but I hold that the state-court pleading does not constitute a waiver of the objections that Mr. Futterman has made in this court or of his argument that Ladera was the contracting party.

The fifth point that I found without merit and that I reject is the contention that the schedules that were filed in the Ladera bankruptcy case somehow constitute admissions that

7

Ladera was not the contracting party. More particularly, there was reference during trial to the fact that Ladera, which was under Mr. Futterman's control, did not list Mr. Guillet or Manhattan Avenue, LLC as a creditor when Ladera filed its bankruptcy schedules. Mr. Futterman testified that he did not list an obligation owed to Mr. Guillet and/or to Mr. Guillet's company because Mr. Futterman believed that conditions had not been satisfied. I do not believe that Mr. Futterman's defenses on those points are correct for the reasons I have stated a few moments ago. But I find his testimony to be credible as to this being the reason why the Ladera schedules do not refer to Mr. Guillet or to his company.

      Finally, Mr. Guillet's counsel argued at closing argument that, under New York case law, the fact that Mr. Futterman sent the April 22, 2011 email in his own name is somehow conclusive on the contract point and prevents Mr. Futterman from contending that Ladera was the contracting party. In support of that proposition Mr. Guillet's counsel cited to the decision in *Stevens v. Publicis S.A.*, 50 A.D.3d 253 (1st Dept. 2008). However, in *Stevens* the court merely held that an email constitutes a writing for purposes of the statute of frauds. There is nothing in *Stevens* that purports to bar Mr. Futterman's contention that the April 22, 2011 email was just inartfully worded and that the real contracting party was understood to be Ladera. I note again that, in the pre-trial order, the parties did not treat this as an issue that could or should be resolved as a matter of law. Instead, they agreed that the email raised factual issues and that I needed to decide what the parties had actually agreed.

      I will now turn to the real issue before me, which is whether the parties agreed that the payment obligation here was an obligation of Mr. Futterman or whether they agreed that it was an obligation of Ladera. In resolving this issue I have considered not only the language of the April 22, 2011 email but also the testimony of the parties regarding their conversations; the

context in which the agreement arose; the subsequent actions of the parties and what those actions reveal as to what the parties themselves actually thought; and my assessments of the personal credibility of the witnesses.

The sequence of the events that were the subject of evidence today was as follows:

- Mr. Futterman's company, Ladera, was going to develop a project for which it wished to acquire development rights.

- Mr. Guillet testified that, as a developer himself, he typically does projects through separate entities rather than in his own name. He also acknowledged that he was aware of the existence of Ladera and that it was Ladera, not Mr. Futterman personally, that was handling the project for which the development rights were sought.

- Drafts of the agreements concerning the sale of development rights were exchanged prior to the April 22, 2011 email. Nobody seems to have retained copies of them, but both Mr. Futterman and Mr. Guillet testified that they were in the name of Ladera – or at least (in the case of Mr. Guillet) they were in Ladera's name to the best of his recollection.

- In the April 22, 2011 email, as noted above, Mr. Futterman referred to what "I" would pay in consideration of the fact that "you" have agreed to pay the Sarley owners $45,000 out of "your" share of the distribution. Mr. Guillet acknowledged during my questions that Mr. Guillet's entity, Manhattan Avenue, LLC – not Mr. Guillet himself – was entitled to a share of the payments being made for the purchase of development rights, and that Manhattan Avenue, LLC (not Mr. Guillet personally) was giving up $45,000 of its share of the development rights proceeds in order to

9

settle the claims that Mr. Sarley had made. By Mr. Guillet's own admission, then, the references in the email to what "you" had agreed to do, and about "your share" of distributions that was being given up, were not really references to things that Mr. Guillet was doing in his personal capacity. Instead, they were inartful references to things that his company, Manhattan Avenue, LLC, was doing.

- The actual contracts for the sale of development rights were all in the name of Ladera, not Mr. Futterman.

- The evidence shows that Ladera, not Mr. Futterman, made a partial payment of the $45,000 obligation in early 2012. Neither party has a copy of the check, but they have stipulated to the admission of Ladera's ledger into evidence, and it shows that Ladera made the payment.

- The evidence also includes a long history of text messages that Mr. Futterman and Mr. Guillet exchanged. The format of the printouts is odd; in particular, the dates of the messages are listed in some coded format that neither the parties nor the Court are sure how to decode. However, the emails refer to financing delays, litigation delays, potential foreclosure proceedings, and ultimately a bankruptcy filing that were obstacles to the completion of the project that Ladera was pursuing. Both Mr. Futterman and Mr. Guillet acknowledged that the text messages referred to problems with the Ladera project, and Mr. Guillet acknowledged that the many references in the text messages to the effect that financing was being pursued were understood by him to be references to the fact that Ladera was seeking financing. In that same context, the statements and the text messages that payments would be made to Mr.

    Guillet when financing was obtained were statements that money would be paid when Ladera had funds.

- As I noted during my questions of Mr. Guillet, the text messages appear to show that the parties understood that payment to Mr. Guillet could not and would not occur until Ladera raised funds. If the obligation had been understood to be Mr. Futterman's personal obligation, and not an obligation of Ladera, then I would have expected that, at some point, Mr. Guillet would have said that Ladera's financing was irrelevant. Furthermore, if the obligation was not Ladera's, then presumably Ladera should not have been using its financing to pay the obligation. On the other hand, if the obligation was Mr. Futterman's, then presumably he could and should have turned to other sources of payment rather than waiting for Ladera to raise financing. But no such questions were raised and no such comments were made.

  I find, after considering all of the evidence, that the parties actually agreed and understood that Ladera, not Mr. Futterman personally, would pay $45,000 to Mr. Guillet or to his company. In reaching this decision, I have considered the conflicting testimony of the witnesses as to conversations that preceded the April 22, 2011 email and as to their understanding of the language used in the email, and I find Mr. Futterman's account of those conversations and understandings to be more credible.

  I have also considered the context in which the agreement was made. Mr. Guillet knew that Ladera, not Mr. Futterman, was buying the development rights. There was every reason why Ladera would pay money to remove an obstacle to the closing of the sale of the development rights, and no convincing reason was offered as to why Mr. Futterman would agree to do so personally.

I have also considered the language of the email. The reference in the email to what "I" would pay was certainly not the right choice and was certainly inartful, but it was no more inartful than the fact that various agreements and rights of Manhattan Avenue, LLC were described as though they were agreements and rights of Mr. Guillet personally.

Finally, I have considered the actions of the parties themselves. Ladera made a partial payment, and the text messages that the parties exchanged show that they understood that additional payments depended on Ladera's financing and not on Mr. Futterman's personal resources. Their exchanges are not consistent with the contention that Mr. Futterman personally was obligated to pay these sums.

I therefore rule that the obligation to make payment to Mr. Guillet and/or to his company was agreed to be and was understood to be an obligation of Ladera and not of Mr. Futterman personally. We will enter a final order to this effect that sustains the objection to Mr. Guillet's claim and that expunges that claim.

Dated:  New York, New York
        March 30, 2020

                                        s/Michael E. Wiles
                                        Hon. Michael E. Wiles
                                        United States Bankruptcy Judge